FILED
NOV 2 2 2006
U.S. DISTRICT COURT
DISTRICT OF RHODE ISLAND

# United States District Court
# For the District of Rhode Island

**UNITED STATES OF AMERICA** :

**Vs.** : **CR. No. 90-00029T**
**CASE No.:**

**YEMI KAYODE** :
**(a/k/a OLUYEMI O. KAYODE,** :
**a/k/a OLUROTIMI KAYODE)** :

CA 06 508 T

...oOo...

**APPLICATION FOR WRIT OF RELIEF FROM JUDGMENT OR ALTERNATIVELY WRIT OF CORAM NOBIS PURSUANT TO TITLE 28 U.S.C. § 1651(a)—ALL WRITS ACT**

Now comes the Defendant, Yemi Kayode, by and through his attorney, Richard K. Corley, and files the instant application for a writ of relief from judgment in the above entitled matter. Alternatively, counsel asks this Court to recognize this writ as a writ of error *Coram Nobis*.

Counsel represents that this Court should review this matter because of the unique equities involved. A brief recitation of the facts will reveal these equities. Defendant's son, Oluwayemi Kayode, Jr., an American citizen, is afflicted with sickle cell anemia (hemoglobin SS, the most severe form of this chronic, potentially life threatening, genetic blood disorder) and his only chance for a cure is a donor for a bone marrow transplant. Children with sickle cell anemia suffer from intermittent vaso-occlusive pain crises, are very susceptible to infections, particularly of the upper respiratory system and blood (sepsis), and may have severe complications including strokes. Oluwayemi Kayode, "Junior", by the age of 5, had been

hospitalized nine times (3 times for pneumonia, once for "paotis" (a lung condition), once for a stroke, and four times for complications related to the sickle cell anemia. Junior's stroke left him partially paralyzed on the right side. In order to minimize the chance of another stroke, which may be more devastating neurologically or fatal, Junior is required to undergo blood transfusions every 4-6 weeks. These transfusions are the most severe kind which require an actual exchange of all his blood.

Chronic blood transfusions create complications, such as excess iron, which can require additional treatment. To reduce iron overload, Junior receives Desferal therapy, by needle injection five days a week. Desferal is a very expensive medication which was paid by Defendant's medical insurance. The Defendant's medical insurance was the sole resource to fund Junior's medical care. Defendant's medical coverage was terminated on October 31, 2006.

According to Peter S. Smith, MD, Director, pediatric Hematology at Rhode Island Hospital, Junior would in all likelihood die if he were to live in Nigeria.

Additional equities include Defendant's inability to secure employment as a nurse because of Immigration and Naturalization Service's deportation order. Defendant has never received or relied on public assistance, has paid his taxes, and is involved with the Salem Gospel Mission church. Defendant is the sole provider for his family. In addition to his own children, Defendant cared for three U.S. citizen children born to Defendant's wife's sister, Mopelola Olubukola Ibidapo. They are now attending college. Defendant was responsible for these children since April 15, 1992, when Mopolola and her husband were deported from the United States for cause after being convicted of a felony. Defendant's employer has indicated a willingness to rehire Defendant if Defendant can reverse the deportation order.

**Jurisdiction**

This Court has jurisdiction to entertain both writs pursuant to Title 28 U.S.C. § 1651(a) ("... all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."). Additionally, this Court has jurisdiction pursuant to common law of all writs not specifically abolished. The Supreme Court held in United States v. Morgan, 345 U.S. 502, 507-08 (1954):

> The writ of *coram nobis* was available at common law to correct errors of fact. It was allowed without limitation of time for facts that affect the "validity and regularity" of the judgment, and was used in both civil and criminal cases.

The District Court of Massachusetts summarized the three requirements that a writ of *coram nobis* should satisfy from prior rulings from the First Circuit Court of Appeals and the United States Supreme Court as: (1) explain his or her [petitioner's] failure to seek relief from judgment earlier; (2) show that the petitioner continues to suffer significant collateral consequences from judgment; and (3) demonstrate that an error of the most fundamental character, relevant to the plea decision, occurred. United States v. Richard J. George, 436 F.Supp. 2d 274 (D. Mass. 2006) citing Hager v. United States, 993 F.2d 4, 5 (1st Cir. 1993).

The Defendant sufficiently satisfies the first requirement. The Defendant's delay in seeking remedy/relief from this Court earlier is premised on having to exhaust his remedies with the Immigration and Naturalization Service. The process was not exhausted until 1997. Thereafter, a legislative private bill was considered and abandoned as unattainable. The repercussions of INS's deportation order did not affect Defendant's employment status until August 30, 2006.

The second requirement is met because the Defendant is suffering collateral consequences from the judgment entered in this case. Defendant's status as deportable, his

inability to legally work because of his immigration status, his loss of health coverage, are all collateral consequences that he still suffers.

Defendant submits and argues below that the errors during his charging and plea are of the most fundamental character and that these errors satisfy the third requirement. Defendant was charged for an offense that could not be sustained under the evidence available. Additionally, Defendant never entered a formal plea nor did the Government proffer that they would prove Defendant had committed an actual crime.

Additionally, at least one court has recognized that relief for a similar situation was available through a writ of relief of judgment. In United States v. Grajeda-Perez, 727 F. Supp. 1374, 1375 ( E.D. Wash. 1989) the District Court stated "Fortunately, this court does not consider itself limited to these two alternatives, but rather finds within the language of the All-Writs Act wide latitude to construct any remedy necessary to "achieve justice" and to right a "wrong" [which] may [otherwise] stand uncorrected."

As a result, this Court has jurisdiction to entertain instant application for writ of error *coram nobis* and/or writ of relief from judgment and grant the relief prayed for below.

## Background

Defendant entered the United States on February 24, 1983 by crossing the Canadian border to enter the United States without inspection. Between 1984 and 1986 he worked picking oranges in the Sorrento Lake area of Florida. Defendant returned to Nigeria to attend to his ailing father in 1987. Defendant returned to the United States with a visa for business purposes in January of 1988.

Defendant applied for permanent resident status with the Immigration and Naturalization Service ("INS") in November of 1988 under the Immigration Reform and Control Act of 1986 ("IRCA") which allowed for Special Agricultural Worker ("SAW") legalization status. In December of 1989, Congress enacted the Immigration Nursing Relief Act of 1989 ("INRA"). Among other things, the legislation amended the termination of status provision for newly legalized SAWs. INRA provided that the INS may rescind the temporary resident status of a SAW and deny adjustment to permanent status if the INS finds that the person "is convicted of a felony or 3 or more misdemeanors committed in the United States." In April of 1990 the INS issued an interim rule implementing the INRA amendments. The regulation interpreted the one felony/three misdemeanor standard to apply to convictions both before and after INRA's enactment.

During a job application process on October 3, 1988, Defendant filled out an Immigration and Naturalization Service Employment Eligibility Verification Form ("I-9 Form"). Defendant checked off the block that indicated that he was a citizen or national of the United States on the I-9 Form and signed the form under penalty of perjury. In 1990, Defendant was charged with violating Title 18 U.S.C. § 911, False Claim of Citizenship.

Defendant was charged by a one-count indictment and presented to the court. The indictment charged that Defendant "did falsely and willfully represent himself to be a citizen of the United States, to wit, did represent on a Form I-9 (INS Employee Eligibility Verification Form) which he executed at Specialty Health Care in Providence, Rhode Island, that he was a citizen of the United States."

On May 11, 1990, before the Honorable Ernest C. Torres, District Judge, Defendant agreed to change his plea to guilty. The Court asked the Defendant if he understood the rights that he was waiving if he changed his plea, to which the Defendant responded "Yes." Thereafter, the Court called on AUSA T. Gale. Mr. Gale proffered that if the case went to trial, the Government was ready to prove:

> ...that the Defendant is a citizen of the country of Nigeria primarily through documents on file with the Immigration and Naturalization Service. Having established that, we would call among others as a witness one Elizabeth Cartwright who is the nursing coordinator for a commercial enterprise known as Specialty Health Care located in Davol Square in Providence, Rhode Island. She would authenticate and testify concerning a document which we in the business frequently call a Form I-9. That is a form that is published by the Immigration and Naturalization Service of the Department of Justice and it is entitled: "Employment Eligibility Verification." One of these forms has to be filled out by virtually every worker in the United States. The evidence would show that on October the 3rd of 1988, Mr. Kayode came to Specialty Health Care, identified himself as Yemi Kayode, giving his address, his Social Security number, his date of birth, signed the form and represented on this Form I-9 that he, in fact, was a citizen or national of the United States which was false and we believe a jury would properly find was false and knowingly false by the Defendant at the time he made that written indication on the form.

The Court sentenced Defendant to one-year probation, a $250.00 fine, and a court assessment of $50.00. The Defendant was never apprised of any collateral consequences his conviction could have, particularly concerning Defendant's immigration deportability status. He was never asked whether he wished to waive his right to collaterally attack his conviction. Defendant has remained in the country since his conviction.

Defendant's application with INS for lawful permanent residence was denied on July 5, 1990. The reason for denial was his conviction in Cr. No. 90-00029T. Defendant's INS appeal was ultimately denied on November 20, 1997. The INS has not acted on the active deportation order because of the substantial equities involved in this case.

On August 3, 2006, Defendant received notice from The Commonwealth of Massachusetts' Executive Office of Health and Human Services Disabilities and Community Services indicating that Defendant's Employment Authorization Card had expired and that unless he provided a new one his employment would be in jeopardy. Defendant's employment as a nurse was terminated effective August 30, 2006. Defendant has been the sole provider for his family which includes his son, an American Citizen, who requires special treatment to treat his sickle cell anemia. According to the doctor's notes, such treatment is not available in Nigeria. Defendant's medical coverage was terminated effective October 31, 2006. The sole source of income for Defendant is some back pay owed by his last employment, nominal funds from rental property and his savings.

Defendant has also raised his brother's children that were left in his care when family members left the United States. These children's parents have not made any monetary contribution. Defendant has no other family in the United States.

Aside from this one conviction, Defendant has lived a law-abiding life in the United States for some eighteen years.

## ARGUMENTS

### I. DEFENDANT WAS NOT PROPERLY CONVICTED UNDER TITLE 18 U.S.C. § 911 BECAUSE THIS SECTION ONLY CRIMINALIZES FALSE CLAIMS OF CITIZENSHIP AND NOT FALSE CLAIMS OF BEING A NATIONAL

The Defendant was wrongly convicted under Title 8 U.S.C. § 911. Title 8 U.S.C. § 911 provides:

> "Whoever falsely and willfully represents himself to be a citizen of the United States shall be fined under this title or imprisoned not more than three years, or both."

It is clear from the unambiguous language of Title 8 U.S.C. § 911 that the United States legislature intended to penalize anyone who falsely and willfully represented that they were a United States citizen. Here it is unclear by the language set forth on the I-9 Form whether the Defendant represented himself to be a "citizen" or a "national". Because the definition of "national" is broader than the definition of "citizen", the Defendant could not have been properly convicted under Title 8 U.S.C. § 911.

"It has long been settled that penal statutes are to be construed strictly, and that one is not to be subjected to a penalty unless the words of the statute plainly impose it." (internal quotation marks and citations omitted) United States v. Campos-Serrano, 404 U.S. 293, 297, 30 L.Ed. 2d 457, 92 S.Ct. 471 (1971). As a result, Title 18 U.S.C. § 911 clearly criminalizes only false claims of United States citizenship. The words of 18 U.S.C. § 911 do not leave any room for ambiguity and do not provide any elasticity as to what constitutes a crime under the statute.

In United States v. Karaouni, 379 F.3d 1139 (9th Cir. 2004), the Court held that the Immigration and Naturalization Service I-9 Employment Eligibility Verification Form was insufficient to support a conviction under 18 U.S.C. § 911. The Court reasoned that the check

box providing for citizen or national was in the disjunctive and that it was impossible to determine whether Defendant represented he was a United States citizen or whether Defendant represented that he was a national. The Appeals Court found that the district court violated a basic principle of criminal law by allowing the government to prove that an individual committed the charged offense by showing that he committed either that offense or some other act. Karaouni at 1143. As a result the conviction was vacated. In this case, Yemi Kayode was allowed to plead guilty to a charged offense not covered in the indictment nor in the statute by partially showing that he had committed some other act.

On February 27, 1990 the Defendant was arrested by Rhode Island Agents of the United States INS. On March 21, 1990, the Grand Jury for the District of Rhode Island returned a one-count Indictment charging Defendant with having violated Title 18 U.S.C. § 911. To support a conviction under this section the Government would have had the burden to have proved beyond a reasonable doubt that: (1) Defendant made a false claim of citizenship; (2) his misrepresentation was willful; and (3) it was conveyed to someone with good reason to inquire into his citizenship status. Defendant asserts that the Government's evidence was insufficient to have convicted Defendant of having made a false claim of citizenship because of the disjunctive inquiry made on the Form I-9.

On October 3, 1988 Defendant signed an I-9 Form when he applied for work with Specialty Health Care. The form has a section that must be filled out to attest to any of the following statuses: 1) citizen or national; 2) permanent resident; or 3) alien authorized to work. This section is set up with a "check block" format to indicate one of the three statuses. The first status provides a disjunctive option declaring that the preparer is either a **citizen** or **national** of the United States. The form also requires that the person preparing the form recognize that such

a declaration is made under that pains and penalties of perjury. The Defendant checked off the first option that he was "A citizen or national of the United States."

It is clear from the statute cited in the indictment, 18 U.S.C. § 911, that the legislature intended to make it a crime for individuals to falsely represent themselves as citizens of the United States. This statute does not provide for any criminal conduct for someone representing themselves to be a **national**. Assuming that Defendant was willful when he checked off the block to indicate that he was "A citizen or national of the United States," it was not clear then whether he was representing to be a citizen or a national. There was never an inquiry into this matter and for the Defendant's purpose, he would have been content with being a national if it allowed him to work in the United States.

As in Karaouni, the Government had the opportunity to charge and indict Defendant under a different statute if the intention was to prove that Defendant had represented himself as a citizen or had committed some other false statement. It did not. Instead the Government sought indictment under one statute which penalizes false representation of citizenship of the United States and nothing else. The definition of a national is broader than that of a citizen and cannot be subsumed by the definition of citizen. The Karaouni Court recognized that the definition of a national as "a person who, though not a citizen of the United States, owes permanent allegiance to the United States" and that a claim to be a U.S. national is not a claim to be a citizen, but a claim to be a member of a broader group that includes citizens as well as others.[1] Defendant's answer on the I-9 Form alone is not conclusive evidence to constitute an offense under Title 18 U.S.C. § 911. Accordingly, Defendant's conviction should be nullified.

---

[1] As a legal concept, the term U.S. national came into use in the aftermath of the Spanish-American War to clarify the status of person born in the territories that the United States acquired from Spain. Hampton v. Mow Sun Wong, 426 U.S. 88, 91, 107-13, 48 L.Ed. 2d 495, 96 S.Ct. 1895 (1976); Rabang v. INS, 35 F.3d 1449, 1452 (9th Cir. 1994); Cabebe v. Acheson, 183 F.2d 795, 797-801 (9th Cir. 1950).

## II. DEFENDANT'S CONVICTION SHOULD BE VACATED BECAUSE NO FORMAL PLEA OF GUILTY WAS ENTERED

Defendant never entered a formal plea of guilty. Rule 11(a)(2) of the Federal Rules of Criminal Procedures allows a Defendant to plead not guilty or guilty (with court consent), and nolo contendere. Failure to enter a plea results in a plea of not guilty. Here, although the Defendant expressed his desire to plea guilty, the court failed to require a formal plea of guilty.

On May 11, 1990, Defendant appeared before District Court Judge Ernest C. Torres for a change of plea. The Court asked the AUSA, T. Gale, if this matter was presented for an entry of a plea and the AUSA answered that's correct. Defendant's attorney, Ed Romano, on behalf of Defendant and AUSA T. Gale told the court that they had reached an oral plea agreement.

The Court questioned Defendant to determine if he understood his rights and the effect of the waiver. The Defendant answered the Court, acknowledging that he understood his rights and waived each right as asked by the Court. These included his right to have his case decided by a jury, his right against self-incrimination, right to cross-examine any witnesses that the Government would present, right to appeal a verdict of guilty and right to appeal any sentence. The Court made additional inquiries of Defendant to determine Defendant's state of mind, Defendant's understanding of the plea agreement, and whether anyone had made any promises or threats with regard to his desire to change his plea. After Defendant answered these Court's questions, the Court went on to asks Defendant "...is it still your **desire to change** your plea to guilty in this case?" (Emphasis Added) The Defendant answered "Yes, Your Honor." Then the Court had him sit down. The Court never asked Defendant to formally enter a change of plea. Neither did the Defendant offer the formal entry of a plea of guilty.

The Defendant submits that he never entered a formal plea of guilty, although he made the Court aware of his desire. Defendant's position is that Rule 11 requires that there be a formal

entry of plea. Defendant submits that this is accomplished by the Court addressing the Defendant directly and asking him to enter his plea and the Defendant responding "Guilty." The process memorialized in the transcripts is silent as to Defendant having changed his plea and formally entering a plea of guilty. Therefore, this Court did not have jurisdiction to entertain sentencing Defendant and Defendant's conviction and sentence should be vacated.

## III. THE GOVERNMENT'S PROFFER WAS INSUFFIENCT TO SUPPORT A CONVICTION UNDER TITLE 18 U.S.C. § 911 WHEN IT DID NOT INCLUDE ANY INTENTION TO PROVE THAT DEFENDANT WAS NOT A UNITED STATES CITIZEN

The Government's proffer to the Court was insufficient to sustain a conviction under Title 18 U.S.C. § 911 because it did not provide the Government's intent to prove that Defendant was not a United States citizen. In Duncan v. United States, 68 F2d 136, (9th Cir. 1933), the Court had opportunity to rule on similar issue. The Court determined that in order for the Government to prosecute under for false claims of citizenships, it was insufficient for the Government to prove that the Defendant was not born in the United States. In order to establish such charge it was not only necessary for prosecution to show that defendant was not born in the United States, but also to show that he was not citizen of the United States. See, Duncan at 143.

Here, during the plea colloquy, the government offered that it would prove:

> "...that Defendant is a citizen of the country of Nigeria primarily through documents on file with the Immigration and Naturalization Service. Having established that, we would call among others as a witness one Elizabeth Cartwright who is the nursing coordinator for a commercial enterprise known as Specialty Health Care located in Davol Square in Providence, Rhode Island. She would authenticate and testify concerning a document which we in the business frequently call a form I-9. That is a form that is published by the Immigration and Naturalization Service of the Department of Justice and it is entitle[d], "Employment Eligibility Verification." One of these forms has to be filled out by virtually every worker in the United States in order to lawfully be employed anywhere in the United States. The evidence would show that on October the 3rd of 1988, Mr. Kayode came to Specialty Health Care, identified himself as Yemi Kayode, giving his address, his Social Security number, his date of birth, signed the form and represented on

> this form I-9 that he, in fact, was a citizen or national of the United States which was false and we believe a jury would properly find was false and knowingly false by the Defendant at the time he made that written indication on the form." Plea Transcript ("PT") page 9.

During the Government's proffer, the Government indicated that they were prepared to prove that the Defendant was a citizen of Nigeria. The AUSA stated he would bring in a witness, Elizabeth Cartwright, to testify that Defendant had filled out the I-9 Form and provided identification as to his identity as Yemi Kayode. The Government went on to proffer that it intended prove that the Defendant represented that he was a citizen or national of the United States which was knowingly false. The Government offered that they believed a jury would properly find that this representation was false and made knowingly false by the Defendant at the time he made that written indication on the form. The legal issue comes up from the charged offense and the intention to prove whether he was not a citizen or national.

The Government's proffer did not include any indication that the Government was prepared to prove that Defendant was not a citizen of the United States. Instead, the Government was prepared to prove that the Defendant was a citizen of Nigeria and that Defendant had falsely and willfully represented himself to be a citizen of the United States. The elements to support such a conviction under Title 18 U.S.C. § 911 should have included not only that the Defendant was a citizen of Nigeria, but also that he was not a United States citizen.

No such proffer was made by the Government. The District Court should have made further inquiry. The proffer was insufficient to support a conviction of false claim of citizenship and the conviction should be vacated.

## IV. DEFENDANT WAS NOT PROVIDED NOTICE OF ANY COLLATERAL CONSEQUENCES A PLEA OF GUILTY WOULD HAVE ON HIS ALIEN WORKER OR RESIDENCY APPLICATION STATUS

The Court's failure to notify Defendant of potential negative immigration consequences should cause for vacatur of conviction. Historically, immigration consequences like deportation, removal and denial of entry were seen by the courts as collateral consequences of convictions and the Courts' failure to notify criminal defendants resulted in little negative consequences. However, the landscape has changed dramatically with legislative changes that now affect convictions retroactivly. What is classified as a collateral consequence in reality has direct consequences on defendants. Alien criminal defendants should be notified of these consequences at time of plea agreement. Here Defendant was not. Had he known, Defendant could have made an informed decision to go to trial.

The United States District Court for the District of Kansas reviewed a writ of *audita querela* brought by a Petitioner claiming that the sentencing Court's failure to inform him of the immigration consequences was cause to vacate his conviction. In United States v. Javanmard, 767 F. Supp. 1109, 1110 (D. Kan. 1991) the Court reviewed Petitioner's application for a writ of *audita querela* and determined that *audita querela* was a common law writ to afford relief to a judgment debtor against a judgment or execution because of some defense or discharge arising subsequent to the rendition of the judgment or the issue of the execution. The court ruled in agreement with the Government that it was historically unable to grant the relief requested by defendant. **However, the court vacated defendant's conviction based on the All-Writs Act, 28 U.S.C.S. § 1651(a), which permitted courts to issue all writs appropriate in aid of their respective jurisdictions and agreeable to usages and principles of law.**

Defendant Javanmard had marked a basic grant application form to state that he was an eligible non-citizen when he applied for a student loan. Javanmard indicated that since his conviction for an offense eight years earlier, to which he was not apprised of the immigration consequences, he had lived his life in a productive and constructive manner. He presented that he had earned a Bachelor of Science in Electrical Engineering and at the time maintained a 3.30 GPA in graduate school working towards a PhD in Engineering.

During the plea allocution, the District Court made inquiries of the Defendant. The District Court also announced the rights that the Defendant would be waiving if he entered a plea of guilty. The District Court did not inform the Defendant of any of the consequences his guilty plea could have with his immigration status. Defendant was never placed on notice by the District Court, nor was he informed by his attorney that a guilty plea could subject him to deportation proceedings being initiated against him. While Defendant maintains that he never formally entered a plea of guilty, should this Court determine otherwise, Defendant maintains that he should have been apprised of the critical consequences that he could be subjected to concerning immigration and deportation proceedings.

The First Circuit Court of Appeals addressed an issue brought by a Cuban national where the Cuban national had been trying to withdraw his plea once he learned of the potential collateral consequences he would be exposed to as a result of his entering the plea. United States v. Gonzalez, 202 F.3d 20, 2000 WL 39120 (1st Cir. 2000). (Decided on the finding that the defendant could not demonstrate prejudice). This Circuit's comment that immigration is a civil collateral consequence can be distinguished and has been by the Federal District Court of Ohio. In United States v. El-Nobani, 145 F. Supp. 2d 906, 916-917 (D. Ohio 2001) the Court took note of the holding of this Circuit and respectfully disagreed with its conclusions.

> The precedent that that case relied upon was derived at a time when an alien defendant's conviction did not automatically lead to deportation. Before AEDPA and IIRIRA, immigration judges could weigh an alien defendant's extenuating factors (length of residency, personal ties, etc.) with the severity of the defendant's crime, unless the defendant had committed an aggravated felony (when the term "aggravated" still had some meaning) and had served at least five years in jail. This Court cannot hold that deportation is merely a collateral consequence of conviction now that most alien defendants will be automatically, and summarily, deported, even those who commit relatively minor crimes and receive no prison time. Consequently, since this Court failed to warn El-Nobani of the deportation consequences of his plea, and because he was reasonably unaware of those consequences, this Court holds that El-Nobani's guilty plea was not made knowingly, voluntarily, and intelligently, and must be vacated.

El-Nobani had argued that his counsel had failed to inform him of the potential immigration consequences and that this was a basis for ineffective assistance of counsel claim. Accordingly, Defendant's conviction should be vacated.

**PRAYER**

WHEREFORE, Defendant prays that this court nullify and void his sentence and conviction or alternatively to reverse judgment and vacate the sentence.

Dated: November 22, 2006

**YEMI KAYODE**

By His Attorneys,

Richard K Corley

Richard K. Corley, (#2965)
Corley Taveras, LLP
127 Dorrance Street, 2nd Floor
Providence, RI 02903
(401) 861-2100
(401) 861-2139 Fax