**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | |
| | : | **Cr. No. 90-00029T** |
| **YEMI KAYODE** | : | **Case No. 06-508T** |
| **(a/k/a OLUYEMI O. KAYODE,** | : | |
| **a/k/a OLUROTIMI KAYODE)** | : | |
| | : | |

**MEMORANDUM IN SUPPORT OF PETITIONER'S MOTION FOR SUMMARY JUDGMENT**

**Factual Background**

Yemi Kayode (the "Petitioner") has never asked the United States Government for anything more than a chance to work hard and to be an upstanding American citizen. From the first time he and his wife, Dolapo Ibidapo, entered this country in 1984, they were ready to put in hard labor to survive on their own. At $5.00 an hour, they began picking oranges at a Farmer's Labor Camp in Florida to earn a living. (See Pre-Sentence Report at pp 4, 6.) When they returned to America in 1988 with a business visa, after having returned to Nigeria the year before to tend to Mr. Kayode's ailing father, the Petitioner began to work as an orderly at Specialty Health Care, earning $7.00 an hour. (See Pre-Sentence Report at p 6.) His income was the only income supporting his family. (See Petitioner's Application for Writ of Relief from Judgment or Alternatively Writ of Coram Nobis Pursuant to Title 28 U.S.C. § 1651(a) – All Writs Act (hereafter the "Application") at p. 7.) Since that time, Mr. Kayode has become a Registered Nurse ("RN"), and has maintained his employment, providing not only for his wife and four

children, but also his three nieces and nephews who have been under his care since 1992. (See Application at p 7.)

Although Yemi Kayode applied for permanent resident status in late 1988, a 1990 amendment to the Immigration Reform and Control Act of 1986 ("IRCA") allowed the Immigration and Naturalization Service ("INS") to deny him that status. Unfortunately, as Mr. Kayode was seeking employment in 1988, he misrepresented that he was a "citizen or national" of the United States by checking off a box indicating as such on an Immigration and Naturalization Service Employment Eligibility Verification Form ("I-9 Form"). This misrepresentation led to the Petitioner being charged with and convicted of violating Title 18 U.S.C. § 911, making a False Claim of Citizenship. When Congress enacted the Immigration Nursing Relief Act of 1989 ("INRA") and amended the IRCA, it authorized the Government to rescind Petitioner's temporary resident status and deny him permanent status because of his felony conviction. (See 8 U.S.C. § 1160(a)(3)(B)(ii)(II)) (authorizing such action if the Attorney General finds that the person was "convicted of a felony or 3 or more misdemeanors committed in the United States.") Although Mr. Kayode did appeal the denial of his application to INS, he was ultimately denied relief in 1997. (See Application at p 7.)

Even though Petitioner's conviction under § 911 has resulted in an active deportation order for his removal, the collateral consequences of Petitioner's conviction were not fully realized until August of 2006, when Mr. Kayode lost his job due to an inability to renew his Employment Authorization. (See Application at p 7.) Since 1993, Yemi Kayode has had to financially support the medical treatment of his ailing son, Oluwayemi, "Junior," who has a severe case of sickle cell anemia. (See Application at p

1.) After Junior suffered a stroke at the age of two, doctors told Mr. Kayode that if his son were to suffer another stroke, it would most likely be fatal. In order to prevent that, Junior has had to undergo severe blood transfusions every six weeks for over a decade, and will continue to require transfusions for the foreseeable future. Unfortunately, the blood transfusions run the risk of causing an iron overload in Junior's body. Therefore, Junior has needed Desferal injections five days a week to remove excess iron from his body. (See Application at p 2.) Sadly, Junior would be unable to receive treatment if he were to live in Nigeria, and according to Dr. Peter S. Smith, Director of Pediatric Hematology at Rhode Island Hospital, would most likely die. (See Application at p 2.) In the United States, Petitioner's medical insurance, along with his financial support, has been able to fund his son's medical care. However, because Mr. Kayode's employment was terminated on August 30, 2006, his medical coverage was terminated on October 31, 2006. (See Application at pp 2, 7.) Yemi Kayode's employer has indicated that they would re-hire the Petitioner were he able to get his conviction reversed. (See Application at p. 2.) If the conviction does stand and Mr. Kayode is deported, he would most likely be unable to find sufficient employment if sent back to Nigeria, and would have to subject his wife and four children to economic and political instability or harm. Within weeks of facing these drastic collateral consequences of the Petitioner's conviction, Mr. Kayode filed his Application with this Court. (See Application.)

## **Jurisdiction**

Contrary to the Government's assertion, this Court does have jurisdiction to entertain Petitioner's Application. The Government's initial legal response to Mr. Kayode's Application is that the Application is "nothing more than a mislabeled motion

under 18 U.S.C. § 2255." (See Government's Response to Defendant's Application for Writ of Relief from Judgment (hereafter "Government's Response") at p 3.) The United States argues that because Mr. Kayode is no longer in custody, and because a § 2255 motion would be time-barred, Mr. Kayode's Application should be denied and dismissed. Government's Response at 9. Yemi Kayode does not contest the assertion that a § 2255 motion would be time-barred and inappropriate at this time. The law clearly states that a Petitioner may not file a § 2255 motion when he or she is no longer in custody, or when the sentence for that conviction has expired. 28 U.S.C. § 2241(c)(3); Maleng v. Cook, 490 U.S. 488, 490-91 (1989). However, this is not a § 2255 motion. Mr. Kayode's Application is a writ of *coram nobis*, and should be treated as such. Over fifty years ago, the Supreme Court held that 28 U.S.C. § 2255 does not bar a person from petitioning for a writ of *coram nobis*. United States v. Morgan, 346 U.S. 502, 510-11 (1954). The writ is available "essentially [as] an assurance that the guaranties of due process under the Federal Constitution will not be denied as a result of the technical limitations of other remedies." 18 Am. Jur. Trials 1 § 1. Provided that the Petitioner (1) explains his failure to seek relief from judgment at an earlier time, (2) shows that he continues to suffer significant collateral consequences from the judgment, and (3) demonstrates that "an error [in the plea decision] of the most fundamental character" occurred, he is entitled to have his conviction set aside. Hager v. United States, 993 F.2d 4, 5 (1st Cir. 1993) (internal quotations omitted).

As stated in Kayode's Application, the Petitioner explained his failure to seek earlier relief. Mr. Kayode had been appealing his application for lawful permanent residence with INS until November 20, 1997, and the deportation order had no effect on

Mr. Kayode's employment until August 30, 2006. Before then, his conviction had never been an issue with his employer. However, once Mr. Kayode had exhausted the available remedies and had suffered the continuing legal consequences of his conviction, he filed his Application shortly thereafter. The Ninth Court has stated that "there is no statute of limitations for coram nobis petitions." United States v. Kwan, 407 F.3d 1005, 1014 (9th Cir. 2005) (where the Circuit Court found the petitioner had adequately explained his delay and was entitled to *coram nobis* relief almost ten years after he was convicted because he had decided to appeal through Immigration law as opposed to other avenues of post-conviction relief). In Kwan, the Circuit Court found that because the petitioner had provided "sound reasons" for the delay, and because he was not trying to abuse the writ, his petition would not be denied just because he could have collaterally attacked his conviction earlier. Id.

As for the second requirement of suffering continuing legal consequences of the conviction, the District Court for the Eastern District of New York has stated that being disqualified from a job due to his criminal conviction qualifies as a continuing legal consequence, and thereby fulfills the second requirement for applying for a writ of *coram nobis*. Dean v. United States, 436 F.Supp.2d 485, 489 (E.D.N.Y. 2006). In addition, Mr. Kayode faces the collateral consequence of possible deportation, which is also sufficient to fulfill the requirement of a collateral consequence. United States v. Esogbue, 357 F.3d 532, 534 (5th Cir. 2004).

The last requirement of a fundamental error in the plea decision was met when the trial judge accepted a guilty plea after no formal plea was entered,[1] and after the Government failed to assert sufficient facts to sustain a conviction. Federal Rules of Criminal Procedure Rule 11 requires the Court to determine that there is a factual basis for the guilty plea before it can enter judgment on it. Fed. R. Crim. P. 11(b)(3). Under Title 18 U.S.C. § 911, a person is guilty of a felony if he "falsely and willfully represents himself to be a *citizen* of the United States." 18 U.S.C. § 911. However, when Judge Torres accepted Petitioner's guilty plea, the only evidence before the Court was that Mr. Kayode had checked off a box on his I-9 form that represented that he was a "citizen *or national*." Plea Hearing Tr. at 10. While it is a crime to falsely represent yourself as being a United States *citizen* under 18 U.S.C. § 911, it is currently not illegal under that statute to claim to be a national[2] of the United States. See United States v. Karaouni, 379 F.3d 1139, 1143 (9th Cir. 2004).

The Applicant has pledged allegiance to the United States and affirmatively renounced an allegiance to Nigeria. [3] In Karaouni, the Ninth Circuit recognized that in charging someone with a § 911 violation based off of an I-9 form, the Government must

---

[1] Mr. Kayode never stated that he was pleading guilty. Rather, he merely affirmatively agreed to the Court's question of whether it was still his "**desire** to change your plea to guilty." Plea Hearing Tr. at 11.

[2] Under current immigration law, the definition of a "national" of the United States means "(A) a citizen of the United States, *or* (B) a person who, though not a citizen of the United States, owes permanent allegiance to the United States." 8 U.S.C. § 1101(a)(22). "Generally, a person may become a national of the United States under the statute granting that status as a result of owing permanent allegiance to the United States only at birth, and a person who is born in another country must affirmatively renounce all allegiance to the foreign state and apply for naturalization in order to become a national of the United States." 3C Am. Jur. 2d Aliens and Citizens § 2249 (citing Oliver v. United States Dept. of Justice, Immigration and Naturalization Service, 517 F.2d 426 (2d Cir. 1975)).

[3] See Applicant's Affidavit.

be careful in proving the offense, because "[a] plain reading of the statute shows beyond any question that the provision covers only false claims of U.S. citizenship and not false claims of U.S. nationality…Whereas the plain language of § 911 refers only to citizenship, the U.S. Code contains other statutory provisions that state explicitly that they apply to both U.S. citizens and nationals or simply use the definition of national set forth in 8 U.S.C. § 1101(a)(22)." Id. If the Government does not present sufficient evidence that the defendant attested that he was a *citizen*, and not a national, then the District Court's acceptance of a criminal conviction will have "violated a basic principle of criminal law." Id. As the Eight Circuit stated recently, "Form I-9 is poorly designed in that by checking one box the person ambiguously represents that he is either a citizen or a national. Therefore, the evidence must support a finding that the alien marked the…box on a Form I-9 with the purpose of representing himself as a citizen, not a national." Rodriguez v. Mukasey, 519 F.3d 773, 776-77 (8th Cir. 2008). Due to the use of disjunctive, at least three Circuit Courts have found it deficient to merely prove that the defendant checked off the box. See id.; United States v. Karaouni, 379 F.3d 1139, 1142-43 (9th Cir. 2004) (stating that although all citizens are nationals, some nationals are not citizens, and thereby would not fall under 18 U.S.C. § 911); United States v. Mulumba, 162 Fed.Appx. 274 (5th Cir. 2005) (not designated for publication). To support a conviction under § 911, "[o]nly a direct representation of U.S. citizenship suffices." Karaouni, 379 F.3d at 1144.

The Fifth Circuit Court of Appeals made a similar finding on direct appeal in **U.S. V. Mulumba**, 162 Fed. Appx. 274 (2005). There the Court issued a Per Curiam decision that stated Applicant's position quite clearly:

> Mulumba contends that the Government failed to prove beyond a reasonable doubt that he represented himself to be a United States citizen. Because Mulumba did not move for a judgment of acquittal in the district court, this court's review of the sufficiency of the evidence "is limited to determining whether there was a manifest miscarriage of justice, that is, whether the record is devoid of evidence pointing to guilt." *United States v. Delgado, 256 F.3d 264, 274 (5th Cir. 2001)* (internal quotation marks and citation omitted).
>
> A conviction for making a false claim of United States citizenship requires proof beyond a reasonable doubt that the defendant "falsely and willfully represented himself to be a citizen of the United States." *18 U.S.C. § 911*. The sole evidence presented by the Government to establish a violation of *18 U.S.C. § 911* was an I-9 Employment Eligibility Verification **[**3]** Form wherein Mulumba checked a box certifying that he was "[a] citizen *or* national of the United States." (emphasis added). Because *18 U.S.C. § 911* criminalizes only false representations of United States citizenship and a person can be a national of the United States and yet not a citizen, the record is devoid of evidence that Mulumba falsely represented himself to be a citizen of the United States. Therefore, Mulumba's conviction under *18 U.S.C. § 911* is REVERSED.

At no time during the Plea Hearing did the Government suggest it was ready to prove that Mr. Kayode checked off that box for the purpose of representing himself as a *citizen*, and not a national. While Mr. Kayode agreed that the Government could prove that he checked off the box that he was not a citizen or national, he did not agree that they could prove he was a citizen. Instead, he agreed that the Government could prove he checked the box marked “citizen *or* national.” Plea Hearing Tr. at 10. Furthermore, the Government never stated that it could prove the Petitioner was not a U.S. citizen. Instead, the U.S. Attorney proffered that it would prove Mr. Kayode was a Nigerian citizen. Plea Hearing Tr. at 9. Proving someone is a citizen of another country is *not* the same as proving they are not a United States citizen or national, and should be found insufficient by this Court to sustain a conviction under 18 U.S.C. § 911.

While there is caselaw that allows a court to rely on the I-9 form to find a false claim of citizenship, the cases are typically appeals from a Board of Immigration Appeals ("BIA") decision (which invokes a lesser evidentiary standard than a criminal case), and are also supported by additional evidence that the petitioner was representing himself to be a citizen. Rana v. Gonzales, 175 Fed.Appx. 988 (10th Cir. 2006) (not designated for publication) (where the petitioner not only checked the box, but testified in court that he did so to represent that he was a *citizen*); Verduzco-Contreras v. Gonzales, 160 Fed.Appx. 406, 408 (5th Cir. 2005) (not designated for publication) (same); see also Rodriguez, 519 F.3d at 778 (where the court found that checking off the box, as well as presenting a fraudulent social security card and driver's license was sufficient evidence to prove the allegation). At the time of the Plea Hearing, the Government's proffer was insufficient to sustain a conviction, which makes the Court's acceptance of the plea a violation of the Federal Rules of Criminal Procedure Rule 11 as well as the Due Process Clause of the Fifth Amendment. Petitioner's writ of error *coram nobis* should be granted, and his conviction should be vacated.

Even if this Court finds a sufficient factual basis existed to accept the Petitioner's plea, it should be noted that the writ of *coram nobis* was originally created as an equitable remedy, Gonzalez v. Sect. for Dept. of Corrections, 366 F.3d 1253, 1289 (11th Cir. 2004), and under the circumstances of this case, there could be no greater equity than vacating Petitioner's sentence. Even this Court found that Mr. Kayode is "quite different from most of the Defendants with whom I usually have contact;" that his motive to check the box "was understandable;" and that he did it "for as **noble** a purpose as one could say that they violated the law for." (emphasis added) Sentencing Hearing Tr. at 6. Mr.

Kayode falsely claimed himself to be a "citizen or national" of the United States in order to get a job to support his family. Sentencing Hearing Tr. at 6. His son had been suffering from a severe case of sickle cell anemia, and had required numerous hospitalizations, blood transfusions and injections, and has suffered from bouts of pneumonia, and a stroke which left him partially paralyzed on his right side. Petitioner's Application at 2. Mr. Kayode's medical insurance, through work, was the only way to fund his son's expensive and continuing medical care. Petitioner's Application at 2. Unfortunately, because Petitioner's employment was terminated as a result of his inability to renew his Employment Authorization Card, his medical coverage was also terminated. Petitioner's Application at 7. At the time of the Sentencing Hearing, Mr. Kayode had been using his $305.37 weekly paycheck from working as a mental retardation counselor/worker to support his entire family. Pre-Sentence Report at 6. Since his conviction, up until August of 2006, Yemi Kayode has continued to work at the Wrentham State School, and by himself, has supported his wife, four of his own children, and three of his nieces and nephews. He has never received public aid, has continued to be current on his taxes, and besides the 18 U.S.C. § 911 violation, has led a law-abiding life. As Judge Torres stated at Petitioner's Sentencing Hearing in 1990, "I am satisfied I will never see you again and I don't think any other judge will see you in any criminal court." Sentencing Hearing Tr. at 7. Almost twenty years later, Judge Torres's prescience and excellent judgment of character has continued to be affirmed through Yemi Kayode's life decisions. Mr. Kayode now has a chance to regain employment if this Court grants his petition, and could once again lead the model American life, one day

as an American citizen. Petitioner's Application at 2. In fact, the only obstacle currently standing in the way of Mr. Kayode attaining citizenship is this conviction.

In contrast, if Petitioner were to be deported to Nigeria, his entire family would have to go with him, which would result in some severe and even dire consequences. The Petitioner's ailing son still requires a substantial amount of medication, as well as blood transfusions once every six weeks, neither of which would be available in Nigeria. If his son does not remain on his medication, there is a risk that he will suffer another stroke, which in all likelihood would be fatal. Even the Director of Pediatric Hematology at Rhode Island Hospital believes that Mr. Kayode's ailing son would likely die if he were to live in Nigeria. Petitioner's Application at 2. Furthermore, there is a substantial likelihood that Yemi Kayode would be unable to attain employment in Nigeria, even though he is a Registered Nurse in the United States. Even something as simple as electricity can be a problem for Nigerian citizens to receive. And to add to the family's distress over their economic and household stability, Yemi Kayode may have to worry about his three young daughters be subjected to Female Genital Mutilation, as the most recent Demographic and Health Survey estimates that over a quarter of all Nigerian women have undergone the procedure. United States Department of State, Office of the Senior Coordinator for International Women's Issues, Nigeria: Report on Female Genital Mutilation (FGM) or Female Genital Cutting (FGC) (June 1, 2001), *available at* http://www.state.gov/g/wi/rls/rep/crfgm/10106.htm. In fact, Applicant's wife Dalopa Ibidapo was subjected to this despicable inhumane procedure as a young girl in Nigeria.

Lastly, the current political climate in Nigeria is less than ideal. Just last year, the Nigerian National Electoral Commission ("INEC") reported corrupt elections as well as

many instances of political violence. United States Department of State, Bureau of African Affairs, Background Note: Nigeria (April 2008), *available at* http://www.state.gov/r/pa/ei/bgn/2836.htm#political. The Petitioner has a good faith basis for believing he would be at risk for physical retribution for having left Nigeria for a better life in the United States. This Court should grant Petitioner's motion and vacate his conviction, because he has met all three requirements for granting a writ of *coram nobis*, and because his extraordinary case is entitled to an "extraordinary" remedy.[4] United States v. Morgan, 346 U.S. at 511 (stating that writs of *coram nobis* should only be granted "under circumstances [which] compel[] such action to achieve justice.").

[4] There should be little concern that granting the Petitioner relief in this case will cause the "floodgates" to open with similar claims. Besides being a factually unique case, it appears as if this crime is rarely prosecuted in this Circuit. A Westlaw search of First Circuit and Rhode Island District Court cases produced no cases involving a Form I-9 and a charge under 18 U.S.C. § 911, and only one case involving a falsified I-9 form. See United States v. Manning, 955 F.2d 770 (1992), *abrogation recognized by* United States v. Gonsalves, 435 F.3d 64 (1st Cir. 2006).

**Respectfully Submitted,**

Dated: June 5, 2008

**YEMI KAYODE**
By His Attorneys,

/s/_Richard K. Corley

Richard K. Corley (#2965)
**Corley Taveras, LLP**
127 Dorrance Street, 2nd Fl
Providence, RI 02903
(401) 861-2100
(401) 861-2139 Fax
rkcorley@ctpllp.com

## CERTIFICATION

I hereby certify that on this 5 day of June 2008, I caused a true copy of the within Petiitoner's Memorandum in Support of Motion for Summary Judgment to be served electronically upon:

Stephen G. Dambruch
Assistant U. S. Attorney
U. S. Attorney' Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
stephen.dambruch@usdoj.gov

/s/ Richard K. Corley

Richard K. Corley